IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| WILLIAM WYTTENBACH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-CV-315 |
| | ) | |
| TEXAS SUPREME COURT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### **MEMORANDUM OPINION**

This civil action is before the court for consideration of several dispositive motions filed by defendants: the "Motion of the Honorable Judge Arnold Cantu to Dismiss Petition by Special Appearance" [doc. 9]; "Respondents Texas Courts' First Amended Special Appearance to File Motion to Dismiss" [doc. 17]; and the "Motion to Dismiss Under Rule 12(b)(1),(2),(4) and (5)" filed by defendant Ranita Parrish [doc. 11]. Plaintiff has not filed a response to the motion filed by Judge Cantu. He has filed a response to the motion filed by the Texas Courts [doc. 20] and to the motion filed by Ranita Parrish [doc. 19]. The Texas Courts also filed a reply brief [doc. 21].[1] Oral argument is unnecessary, and the motions are ripe for the court's determination. For the reasons that follow, all three motions will be granted, and this case will be dismissed.

---

[1] Subsequent to the filing of the Texas Courts' reply brief, plaintiff filed two supplemental briefs without first seeking prior approval of the court [docs. 23, 24]. E.D. Tenn. L.R. 7.1(d). Plaintiff's filings do not meet the requirements of Local Rule 7.1(d). Therefore, except to the extent a small portion of doc. 23 can be considered a reply regarding plaintiff's motion for sanctions and motion to strike [docs. 19. 20], these filings will not be considered by the court.

I.

*Background*

Plaintiff was involved in a custody dispute in the state of Texas, which resulted in defendant Honorable Judge Arnold Cantu issuing an order of contempt in 2009. Plaintiff filed petitions for mandamus with the Texas Court of Appeals and Texas Supreme Court in an effort to appeal the order. His contention is that the trial court in Texas lacked jurisdiction to issue the enforcement order. Acting *pro se*, plaintiff has filed a petition for writ of mandamus seeking this court to direct the Texas Supreme Court to vacate the contempt order issued by Judge Cantu.

II.

*Analysis*

Subject Matter Jurisdiction

**Writ of Mandamus**

Plaintiff has filed a writ of mandamus in which he seeks to have this court order the Texas Supreme Court to void a contempt order issued by a Texas state court. Thus, plaintiff is asking this court to review state court decisions and direct the state courts to act. Defendants argue that this court does not have subject matter jurisdiction to issue writs of mandamus. Plaintiff relies on 28 U.S.C. § 1651(a) and Federal Rule of Civil Procedure 21(a).

2

"[I]t is well established that federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute." *Hudson v. Coleman*, 347 F.3d 138, 141 (6th Cir. 2003); *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("Federal Courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto."). The party asserting jurisdiction has the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, the plaintiff herein has the burden of demonstrating that this court has subject matter jurisdiction over the action he has filed.

"The writ of mandamus as such has been abolished by Rule 81(b), Fed. R. Civ. P. However, under 28 U.S.C. § 1651 (All Writs Statute) federal courts may issue all writs necessary or appropriate in aid of their respective jurisdictions, including writs in the nature of mandamus." *Haggard v. State of Tenn.*, 421 F.2d 1384, 1385 (6th Cir. 1970) (citations omitted). However, "federal courts have *no authority to issue writs or mandamus to direct state courts or their judicial officers in the performance of their duties*." *Id*. at 1386. (citations omitted) (emphasis added); *see also Smith v. Thompson*, 437 F. Supp. 189, 191 (E.D. Tenn. 1976) (district court did not have jurisdiction to issue writ of mandamus directing state court to act on post-conviction relief petition); *Clark v. Washington*, 366 F.2d 678, 681 (9th Cir. 1966) ("The federal courts are without power to issue writs of mandamus to direct state courts or their judicial officers in the performance of their duties . . . ."). This

3

court lacks federal subject matter jurisdiction over plaintiff's claim for a writ of mandamus, and on that basis the case must be dismissed.

**Domestic Relations Exception**

Some of the defendants additionally argue that the court lacks subject matter jurisdiction based upon the domestic relations exception. Federal courts cannot maintain suits based on diversity jurisdiction when the matter in controversy involves child custody or issues of domestic relations. *Firestone v. Cleveland Trust Co.*, 654 F.2d 1212, 1215 (6th Cir. 1981). "Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court." *Id*.

> The field of domestic relations involves local problems peculiarly suited to state regulation and control, and peculiarly unsuited to control by federal courts. The whole subject of domestic relations of husband and wife, parent and child, belongs to the laws of the states and not to the laws of the United States.

*Id*. (internal quotation marks and citations omitted). "The district court lacks federal subject matter jurisdiction and must dismiss a case if the domestic relations exception is implicated." *Howard v. Jarvi-Jones*, Nos. 10-10417, 10-11880, 10-14349, 2011 WL 1261160, at *3 (E.D. Mich. Mar. 31, 2011) (citing *McLaughlin v. Cotner*, 193 F.3d 410, 415 (6th Cir. 1999)).

The core of plaintiff's dispute with the Texas courts is a child custody and support issue. This is clearly a domestic relations matter that is "peculiarly suited to state regulation and control" and not a matter for federal court resolution. Therefore, the domestic

4

relations exception is applicable in this case, and the court lacks federal subject matter jurisdiction. The case must be dismissed on that basis as well.

### *Rooker-Feldman* Doctrine

Some of the defendants argue that this case should be dismissed based on the *Rooker-Feldman* doctrine, which also implicates this court's subject matter jurisdiction. Pursuant to this doctrine, district courts lack subject matter jurisdiction to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "A United States district court has no authority to review final judgments of a state court in judicial proceedings. Review of such judgments may be had only in [the United States Supreme] Court." *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-83 (1983); *see also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923). "[L]ower federal courts possess no power whatever to sit in direct review of state court decisions." *Cleveland Surgi-Center v. Jones*, 2 F.3d 686, 691 (6th Cir. 1993) (citation omitted). "*Rooker-Feldman* applies only where a state court judgment is the source of the injury upon which plaintiff bases his federal claim." *Sanford v. Standard Fed. Bank*, No. 10-12052, 2011 WL 721314, at *3 (E.D. Mich. Feb. 23, 2011) (citing *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006)).

5

Plaintiff's petition in this case falls within the *Rooker-Feldman* doctrine because he is seeking relief from the judgment entered by the Texas courts regarding his rights related to child custody and support. The state court judgments are the source of the injury for which he seeks relief and review by this court. Therefore, this case must also be dismissed based on the *Rooker-Feldman* doctrine.

Personal Jurisdiction

All of the defendants argue that this case must be dismissed because the court lacks personal jurisdiction over them since they do not have any contacts with Tennessee. Plaintiff does not specifically address the issue his responses.

Plaintiff has the burden of demonstrating that personal jurisdiction exists as he is the party asserting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991); *Market/Media Research, Inc. v. Union-Tribune Publ'g Co.*, 951 F.2d 102, 104 (6th Cir. 1991). When faced with a properly supported motion to dismiss, "the plaintiff may not stand on the pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen*, 935 F.2d at 1458 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)).

The court has the discretion to decide the issue of jurisdiction on the affidavits of the parties. *Id.* When the court decides the motion on the affidavits and pleadings, the plaintiff need only make a prima facie showing to defeat dismissal. *Id.*; *Neogen Corp. v. Neo*

6

*Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). The prima facie burden is met "by 'establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction.'" *Neogen*, 282 F.3d at 887 (quoting *Provident Nat'l Bank v. Cal. Fed. Savings & Loan Ass'n*, 819 F.2d 434, 437 (3rd Cir. 1987)). In this circumstance, the court views the pleadings and affidavits in the light most favorable to the plaintiff and does "not consider facts proffered by the defendant that conflict with those offered by the plaintiff." *Id*. (citing *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).

"When determining whether there is personal jurisdiction over a defendant, a federal court must apply the law of the state in which it sits, subject to constitutional limitations." *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994). This involves inquiring into whether the state long-arm statute and due process have been satisfied. *Id*. Because the Tennessee long-arm statute extends to the constitutional limits of due process, these two inquiries are merged into the single determination of whether the assertion of personal jurisdiction over the defendants in this district violates due process. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., Ltd*., 91 F.3d 790, 793 (6th Cir. 1996)(citing *Third Nat'l Bank in Nashville v. WEDGE Group Inc*., 882 F.2d 1087, 1089 (6th Cir. 1989)).

Personal jurisdiction is characterized as either "general" or "specific." *See Nationwide*, 91 F.3d at 793-94. General jurisdiction involves the court's authority to hear a cause of action involving a defendant, whether or not the cause of action arose from the

7

defendant's activities within the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 (1984)). An assertion of general jurisdiction requires a showing of "continuous and systematic" contacts with the forum state. *Id.* at 416. No such jurisdiction exists in this case.

Specific jurisdiction, on the other hand, involves a circumstance in which the claims arise directly from or are related to a defendant's contacts with the forum state. *Aristech Chem. Int'l Ltd. v. Acrylic Fabricators Ltd.*, 138 F.3d 624, 627-28 (6th Cir. 1998). Often a single act can be the basis for specific jurisdiction. *Nationwide*, 91 F.3d at 794. The critical inquiry in this context is whether the nonresident defendant has sufficient contacts with the forum state so that the exercise of jurisdiction is consistent with "traditional notions of fair play and substantial justice." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1263 (6th Cir. 1996) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Sixth Circuit has set out a three-part test to determine whether the assertion of specific jurisdiction is appropriate.

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Payne v. Motorists' Mut. Ins. Cos.,* 4 F.3d 452, 455 (6th Cir. 1993) (quoting *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)); *see also Kerry*

*Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997).

After applying these factors and considering the content of the petition and the lack of documentation submitted by plaintiff in support of personal jurisdiction, the court concludes that plaintiff has failed to show that this court has personal jurisdiction over the defendants. Not one of the defendants has purposefully availed themselves of the privilege of acting in Tennessee, and there is no showing that any of the defendants live or own property in Tennessee. None of the actions complained about by plaintiff arose from any activity by the defendants in Tennessee. Thus, none of the defendants' actions had any connection with Tennessee. Accordingly, the court finds that it would be unreasonable to exercise personal jurisdiction over the defendants in this case. Plaintiff's petition must likewise be dismissed for a lack of personal jurisdiction.

### Judge Cantu - Absolute Judicial Immunity

Judge Cantu also argues that the claims asserted against him should be dismissed on the basis of absolute judicial immunity. Plaintiff did not file a response to Judge Cantu's motion.

"It is well-established that judges enjoy judicial immunity from suits arising out of the performance of their judicial functions." *Brookings v. Clunk*, 389 F.3d 614, 617 (6th Cir. 2004) (citing *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967)). This immunity applies even if the "exercise of authority is flawed by the commission of grave procedural errors."

9

*Stump v. Sparkman*, 435 U.S. 349, 359 (1978). "In fact, judicial immunity applies to acts performed maliciously and corruptly as well as acts performed in bad faith or with malice." *Brookings*, 389 F.3d at 617.

Absolute judicial immunity ensures that "a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Mireles v. Waco*, 502 U.S. 9, 10 (1991) (citations omitted). Judicial immunity can only be overcome under two circumstances. First, no absolute immunity applies if the judge acted outside his or her judicial capacity. "Judges and other court officers are absolutely immune from suit on claims arising out of the performance of judicial or quasi-judicial functions but not from suits that arise out of other conduct." *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000) (internal citations omitted). To determine whether a defendant is entitled to absolute immunity, the court should look to "the nature of the function performed, not the identity of the actor who performed it." *Id*. (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Second, judicial immunity does not apply if the action taken was judicial in nature but performed in the absence of jurisdiction. *Mireles*, 502 U.S. at 12; *Barrett v. Harrington,* 130 F.3d 246, 255 (6th Cir. 1997).

To determine whether an act is "judicial," the court looks to "whether the parties dealt with the judge in his or her judicial capacity." *Brookings*, 389 F.3d at 617. The Sixth Circuit "has recognized that 'paradigmatic judicial acts or acts that involve resolving

10

disputes between parties who have invoked the jurisdiction of a court, are the touchstone for application of judicial immunity." *Id*. at 618 (internal quotation marks and citation omitted).

In support of his motion, Judge Cantu has submitted his affidavit in which he sets out the scope of his jurisdiction and the actions he took regarding the plaintiff pursuant to that jurisdiction. Judge Cantu's conduct toward the plaintiff was clearly judicial in nature and performed in his capacity as a judge. Thus, unless plaintiff can show that Judge Cantu acted without jurisdiction, absolute immunity applies. Plaintiff has made no such showing. He has submitted nothing to contradict or challenge the sworn testimony in the judge's affidavit concerning the judicial acts he performed within his stated jurisdiction. Accordingly, Judge Cantu is entitled to absolute judicial immunity, and on that basis he is entitled to have this action dismissed. *Archie v. Lanier*, 95 F.3d 438, 440 (6th Cir. 1996) ("Judicial immunity, like qualified immunity, is an immunity from suit, not just from an ultimate assessment of damages.").

The defendants have raised several other bases for dismissal. However, because the court has found that it does not have subject matter jurisdiction over plaintiff's claims or personal jurisdiction over the defendants, the court does not need to reach these other reasons for dismissal.

In his response to the motions filed by the Texas courts [doc. 20] and the response to the motion filed by defendant Parrish [doc. 19] plaintiff asserts a motion for sanctions under Fed. R. Civ. P. 11 and a motion to strike under Rule 12(f). The court will

now address these.

**Rule 11 Motions**

Both motions for sanctions will be denied. A Rule 11 motion for sanctions "'shall not be filed with or presented to the court' unless the movant has first served the opposing party with the motion and provided 21 days to withdraw or correct the alleged violation." *Bradford v. Lanphere*, No. 1:09-CV-253, 2009 WL 1606559, at *2 (W.D. Mich. June 8, 2009) (citing Fed. R. Civ. P. 11(c)(1)(A)). Known as the "safe harbor" provision, this requirement is mandatory. "The plain language of Rule 11 specifies that unless a movant has complied with the twenty-one day 'safe harbor' service, the motion for sanctions 'shall not be filed with or presented to the court.'" *Ridder v. City of Springfield*, 109 F.3d 288, 296 (6th Cir. 1997) (quoting Fed. R. Civ. P. 11(c)(1)(A)); *see also First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002) ("Rule 11 is unavailable where the moving party fails to serve a timely 'safe harbor' letter."); *McGhan v Kalkaska County Dep't of Human Servs.*, No. 1:08-CV-1113, 2009 WL 2170151, at *14 (W.D. Mich. July 20, 2009) ("Because [defendant] has not demonstrated his compliance with the mandatory safe harbor provisions of Rule 11, his motion for sanctions must be denied.").

Plaintiff has not alleged or demonstrated in his motion that he complied with the "safe harbor" provisions of Rule 11. Accordingly, his motions for sanctions will be

12

denied.[2]

**Motions to Strike**

Plaintiff also attempts to strike the motions to dismiss of the Texas courts and defendant Parrish. Fed. R. Civ. P. 12(f) provides in relevant part, "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Plaintiff's motion has no merit. The motions filed by these defendants are completely appropriate as responses to plaintiff's petition, and there is no basis to strike either of them. Plaintiff's motions to strike will be denied as well.

III.

*Conclusion*

Accordingly, for all of the reasons discussed above, the motions to dismiss will be granted, and this case will be dismissed. Plaintiff's motions for sanctions and motions to strike will be denied. An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan
United States District Judge

---

[2] In any event, the court observes that on the face of the pleadings contained in the record, there would be no basis for the imposition of sanctions as alleged by plaintiff.

13